**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**RAHASHEEM A. BROWN,**

                                        **Petitioner,**

         **vs.**                                                    **9:10-CV-0311**
                                                                         **(NAM)**

**WILLIAM A. LEE,**

                                        **Respondent.**

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**APPEARANCES:**                              **OF COUNSEL:**

Rahasheem A. Brown
06-A-1094
Green Haven Correctional Facility
P.O. Box 4000
Stormville, NY 12582
Petitioner, *pro se*

Eric T. Schneiderman                          Paul M. Tarr, Esq.
Office of the Attorney General                Assistant Attorney General
State of New York
120 Broadway
New York, NY 10271
Attorney for Respondent

**Norman A. Mordue, Chief United States District Judge**

                    **MEMORANDUM-DECISION AND ORDER**

**I.        BACKGROUND**

           **A.        State Court Proceedings**

           According to the state court records provided to this Court, on the afternoon of April 29,

2005, New York State Police Investigators Richard Butterfield and Frank Cameron were working

in an undercover "buy and bust" operation in the City of Schenectady, New York.  *See* Transcript

of Trial of Rahasheem A. Brown (12/5/05) ("Trial Tr.") at pp. 368-69.  While the two traveled

down Emmett Street in Schenectady during that investigation, they saw a thin black male wearing a green jacket, gray jeans, and a hat. *Id.* at p. 371. The two investigators gestured to the man, later identified as petitioner, *pro se*, Rahasheem A. Brown, *id.* at pp. 371-72, 379-80, and Brown motioned for them to pull their automobile over. *Id.* at pp. 434-35. Once the officers had stopped their vehicle, Brown approached the passenger's side of the car where Investigator Cameron was seated. *Id.* at p. 372. Investigator Cameron asked Brown if he had any $20.00 pieces of crack cocaine for sale, however he responded that he only had $10.00 pieces he could sell. *Id.* at p. 435. Investigator Cameron then asked Brown for two $10.00 pieces, and the investigator paid for those pieces by handing Brown a ten dollar bill and two five dollar bills. *Id.* Brown then handed Investigator Cameron two baggies containing substances that later proved to be crack cocaine. *Id.* at pp. 435, 586-91. After the sale to Investigator Cameron, Investigator Butterfield asked Brown, "are they big," *id.* at p. 372, to which Brown replied, "Yeah, they're big," and held out bags of crack cocaine for Investigator Butterfield to view. *Id.* Investigator Butterfield then declared that he would also purchase two baggies of crack cocaine, and handed Brown $20.00 for that purchase. *Id.* Brown then handed Investigator Butterfield two baggies containing items that later tested positive for the presence of cocaine. *Id.* at pp. 372, 586-91.

After those transactions, Investigator Butterfield asked Brown if he would "be out all day," to which Brown replied, "Yes, I'll be out all day." *Id.* at p. 374. Brown also provided the investigators with his cell phone number. *Id.* Soon thereafter, Investigator Cameron requested assistance from other officers in apprehending Brown. *Id.* at p. 439. In response to that transmission, Schenectady Police Officer Sean Clifford began looking for Brown in the area where the drug sales had just occurred. *Id.* at pp. 493-94. After a period of time, Officer Clifford

observed Brown walking on Emmett Street in Schenectady. *Id.* at pp. 494-95. Brown noticed Officer Clifford's marked patrol car, however, and dropped items that he was holding out of his right hand. *Id.* at pp. 495-96. Officer Clifford succeeded in apprehending Brown, and the officer also recovered the items Brown had dropped just prior to his arrest. *Id.* at pp. 496-97. Those items included five baggies containing crack cocaine as well as some money. *Id.* at pp. 497-98, 586-91. The money recovered from Brown was then provided to Detective Daniel Moran, who compared the serial numbers on that currency with photocopies of the "buy money" that had been made for purposes of the investigation. *Id.* at pp. 497-500. Detective Moran determined that the serial numbers on one ten dollar bill and one five dollar bill recovered from Brown matched the serial numbers on the photocopies of the bills that had been provided to Investigators Butterfield and Cameron for their investigation. *Id.* at pp. 543-45.

After Brown was brought to the police station, Officer Clifford gave the $40.00 that was taken from Brown in conjunction with his arrest to Detective William Relyea, who placed the ten dollar bill and five dollar bill that had been identified as the "buy-money" in a tamper-proof evidence bag. *Id.* at pp. 496-98. The other $25.00 recovered from Brown was inventoried along with other personal items taken from him by booking assistant Officer Ronald Kent. *Id.* at pp. 598-99.

As a result of the foregoing, a Schenectady County Grand Jury returned an indictment against Brown which accused him of two counts of third degree criminal sale of a controlled substance and three counts of criminal possession of a controlled substance in the third degree. *Id.* at pp. 332-33.[1]

---

[1] This Court was never provided a copy of the Indictment returned by the Schenectady County Grand Jury.

Brown's jury trial on the above charges commenced in Schenectady County Court on December 5, 2005, with acting Schenectady County Court Judge Jerome J. Richards presiding. At the conclusion of that trial, the jury found Brown guilty of two counts of criminal sale of a controlled substance in the third degree and three counts of third degree criminal possession of a controlled substance. Trial Tr. at pp. 723-27. On February 24, 2006, Brown appeared before Judge Richards for sentencing. At that proceeding, the Trial Court sentenced Brown, as a second felony offender, to a determinate prison term of eleven years, to be followed by three years of post-release supervision. *See* Transcript of Sentencing of Rahsheem Brown (2/26/06) (Dkt. No. 15-21) ("Sentencing Tr.") at pp. 15-16.

Brown appealed the foregoing convictions and sentence to the New York State, Supreme Court, Appellate Division, Third Department. Appellate counsel filed a brief in support of that appeal, *see* Appellate Brief on Appeal (Dkt. No. 15-1) ("App. Br."), and Brown filed a *pro se* appellate brief in further support of his appeal. *See* Dkt. No. 15-2 ("*Pro Se* Appellate Brief"). The Schenectady County District Attorney ("District Attorney") filed a memorandum of law in opposition, Dkt. No. 15-3, to which Brown filed a *Pro Se* Reply Brief. *See* Dkt. No. 15-4 ("*Pro Se* Reply"). On June 12, 2008, the Third Department affirmed Brown's convictions and the imposed sentence in all respects. *People v. Brown*, 52 A.D.3d 943 (3d Dept. 2008), *leave denied*, *People v. Brown*, 11 N.Y.3d 735 (2008).

On March 30, 2009, Brown filed a motion to vacate his judgment of conviction pursuant to New York's Criminal Procedure Law ("CPL"), § 440.10 ("CPL Motion"). *See* Dkt. No. 15-10. The District Attorney opposed that application, *see* Dkt. No. 15-11, and Brown filed a *pro se* reply affirmation in further support of his request. *See* Dkt. No. 15-12 ("CPL Reply"). On June 2, 2009,

4

the County Court issued a Decision and Order that denied Brown's CPL Motion in its entirety. *See* Dkt. No. 15-13 ("June, 2009 Order"). Brown sought permission to appeal the denial of his CPL Motion, however on September 2, 2009, the Third Department denied that application. *See* Dkt. No. 15-16.

**B.    Unexhausted Claims**

**B.    This Action**

Brown commenced the present action, *pro se*, on February 25, 2010. *See* Dkt. No. 1 ("Petition"). In his pleading, he argues that he is entitled to federal habeas intervention because: i) the prosecutor engaged in misconduct; ii) he received the ineffective assistance of trial counsel; iii) the prosecutor wrongfully withheld evidence from the Grand Jury that ultimately indicted Brown; and iv) a tape recording made at the time of the alleged crimes establishes that Brown is actually innocent of all crimes of which he was convicted. *See* Petition, Grounds One through Four.

On December 23, 2010, the Office of the Attorney General for the State of New York, acting on respondent's behalf, filed an answer (Dkt. No. 14) and a memorandum of law in opposition to the petition (Dkt. No. 16) ("Resp. Mem."), which memorandum was supplemented by the respondent in his letter-brief filed January 27, 2011 (Dkt. No. 18). The respondent has also provided the Court with various state court records relating to Brown's conviction. Dkt. No. 15. In opposing Brown's habeas application, respondent argues that petitioner has failed to fully exhaust all but one of his grounds for relief, and that all of his claims lack merit. *See* Resp. Mem.

This matter is now currently before this Court for disposition.

**II.    DISCUSSION**

**A.    Unexhausted Claims**

In opposing petitioner's application, respondent initially contends that Brown has not fully

exhausted his habeas theories which allege that:  i) the prosecutor engaged in misconduct by failing to advise the defense that the prosecutor intended to introduce a tape recording as evidence against Brown (Petition, Ground One); ii) the District Attorney failed to provide the defense with a photocopy of the pre-recorded "buy" money used in the undercover investigation (*id.*); iii) the prosecutor wrongfully utilized certain of Brown's personal effects against him at his trial (*id.*); and iv) the prosecution improperly failed to play to the Grand Jury an exculpatory tape recording (*id.*, Ground Three).  *See* Resp. Mem. at pp. 13-18.  Additionally, Brown himself concedes that his fourth ground for relief, in which he argues that he is actually innocent of the crimes of which he was convicted, is unexhausted.  *See* Dkt. No. 2 at ¶¶ 1-3; Dkt. No. 8 at p. 1 (noting that state court challenge filed by Brown ***after*** he commenced this action related to the fourth ground raised by him in his petition); Dkt. No. 17 at ¶ 1 (same); *see also* Petition, Ground Four.

It is well-settled that a federal district court " 'may not grant the habeas petition of a state prisoner unless it appears that the applicant has exhausted the remedies available in the courts of the State . . . .' "  *Shabazz v. Artuz*, 336 F.3d 154, 160 (2d Cir. 2003) (quoting *Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir. 2001)); *see also Hill v. Mance*, 598 F.Supp.2d 371, 375 (W.D.N.Y. 2009). This is because "[s]tate courts, like federal courts, are obliged to enforce federal law." *Galdamez v. Keane*, 394 F.3d 68, 72 (2d Cir. 2005) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999)) (other citations omitted).  As the Supreme Court noted in *O'Sullivan*, "[c]omity . . . dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief." *Id.*, 526 U.S. at 844 (citations omitted); *see also Galdamez*, 394 F.3d at 72

(quotation omitted).[2]  Thus, this Court must determine whether petitioner has fully exhausted the above-mentioned grounds for relief.

A petitioner exhausts his state remedies in the federal habeas context by:  "(i) present[ing] the federal constitutional claim asserted in the petition to the highest state court (after preserving it as required by state law in lower courts); and (ii) inform[ing] that court (and lower courts) about both the factual and legal bases for the federal claim."  *Ramirez v. Attorney Gen.,* 280 F.3d 87, 94 (2d Cir. 2001) (quoting *Picard v. Connor*, 404 U.S. 270, 276-77 (1971)).  A "basic requirement" of this exhaustion doctrine is that "the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature."  *Jones v. Vacco*, 126 F.3d 408, 413 (2d Cir. 1997) (citation omitted); *see also Berry v. Hulihan,* No. 08 Civ. 6557, 2009 WL 233981, at *2 (S.D.N.Y. Jan. 28, 2009) (citations omitted); *Jackson v. Senkowski*, No. 03 CV 1965, 2007 WL 2275848, at *5 (E.D.N.Y. Aug. 7, 2007).  A "state prisoner does not 'fairly present' a claim to a state court" where the appellate brief "does not alert [the court] to the presence of a federal claim . . . ." *Baldwin v. Reese*, 541 U.S. 27, 32 (2004); *see also Williams v. Breslin*, No. 06-CV-2479, 2008 WL 4179475, at *3 (E.D.N.Y. Sept. 9, 2008) (citing *Baldwin*).

Considering first the various theories asserted by Brown in his initial ground for relief, the Court notes that in his *Pro Se* Appellate Brief, Brown argued that the prosecutor never advised the defense of its intention to introduce any tape recording made during the drug transaction, "or any other form of intercepted evidence," into evidence against Brown.  *See Pro Se* Appellate Brief,

---

[2] This exhaustion requirement "reduces friction between the state and federal court systems by avoiding the 'unseem[liness]' of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance."  *O'Sullivan*, 526 U.S. at 845 (quotation and other citations omitted); *see also Galdamez*, 394 F.3d at 72 (quotation omitted).

Point Two.  In counsel's appellate brief, Brown's attorney argued that the Trial Court committed error when it permitted the District Attorney to obtain Brown's cell phone, inspect that device and thereafter introduce that item into evidence.  *See* App. Br., Point Two.  In his CPL Motion, Brown reiterated his claim that the prosecutor improperly failed to notify the defense of its intention to offer tape-recorded conversations into evidence, and he also argued that the District Attorney was wrongfully allowed to take possession of Brown's personal items and thereafter utilize those items against Brown at his trial.  *See* CPL Motion at ¶¶ 19-21.

However, as noted *ante*, to exhaust a claim for federal habeas purposes, either the nature of the appellate claim itself, or the manner in which such claim was presented to the state court, "must have been likely to alert the court to the claim's federal nature."  *Jones*, 126 F.3d at 413.

With respect to Brown's claim that the prosecution engaged in misconduct because it played tape-recorded evidence at Brown's trial, neither appellate counsel's brief, Brown's *Pro Se* Appellate Brief, his *Pro Se* Reply, his CPL Motion, nor petitioner's CPL Reply referred, in any way, to the United States Constitution, any federal case, or any federal statute in asserting that claim.[3]  Thus, the first theory asserted by Brown in his initial ground for relief is unexhausted.

Next, this Court notes that nowhere in any of the state-court filings did Brown ever allege, as he does in the second theory asserted by him in his first ground for relief, that the prosecutor wrongfully failed to provide the defense with a photocopy of the "buy money" used during the course of the investigation that ultimately resulted in Brown's arrest and prosecution.  Thus, Brown has plainly failed to exhaust this second theory alleging prosecutorial misconduct.

---

[3] Brown argued in his *Pro Se* Appellate Brief that the County Court's decision allowing that evidence to be heard by the jury was inconsistent with various Federal Rules of Evidence.  *See Pro Se* Appellate Brief, Point Two.  However, nowhere in that brief – or any other state court filing – did Brown argue in **federal** terms that the **prosecutor** engaged in misconduct by playing that tape to the jury.

Brown also failed to argue, in federal terms, the final theory he now asserts in his initial ground for relief, i.e., that the prosecutor engaged in misconduct by using Brown's personal effects against him at his trial. *See* App. Br.; *Pro Se* Appellate Brief; *Pro Se* Reply; CPL Motion; and CPL Reply.[4]

This Court therefore concludes that Brown has not exhausted any of the claims he asserts in his initial ground for habeas relief.

Advancing to his third ground, in that claim, he argues that the District Attorney wrongfully withheld from the Grand Jury an exculpatory tape recording made during the course of the related criminal investigation. *See* Petition, Ground Three. Petitioner asserted this argument in his *Pro Se* Appellate Brief, *see id.* at Point Two, and referenced a Supreme Court case in support of that aspect of his appeal. *Id.* (citing *Wood v. Georgia*, 370 U.S. 375 (1962)). Brown therefore alerted the Appellate Division to the federal nature of this claim. However, to fully exhaust a claim for purposes of a federal habeas corpus petition, the petitioner must have asserted all claims for which federal habeas review is sought in his application seeking leave to appeal from New York's Court of Appeals. *See Galdamez*, 394 F.3d at 74-75 (citations omitted); *Morgan v. Bennett*, 204 F.3d 360, 369 (2d Cir. 2000) (describing process for seeking leave to appeal to New York's Court of Appeals); *Jamison v. Girdich*, No. 03 CIV.4826, 2005 WL 2338660, at *4 (S.D.N.Y. Sept. 26, 2005); *Geraci v. Sheriff, Schoharie County Jail*, No. 9:99-CV-0405, 2004 WL 437466, at

---

[4] In his *Pro Se* Reply, Brown argued that the instruction provided by the County Court to the jury regarding exhibits that could be viewed by witnesses and the jury, but which were not received into evidence, violated Brown's "due process" rights. *See Pro Se* Reply at Point Nine. However that state court claim did not allege that the *prosecutor* violated Brown's constitutional rights. Furthermore, it is far from clear to this Court whether "the mere incantation of the words 'fair trial' [or] 'due process of law' before the state court[]" alerted the Appellate Division to the existence of any federal claim. *E.g., Smalls v. Batista*, 6 F.Supp. 2d 211, 217 (S.D.N.Y. 1998) (citation omitted).

*3 (N.D.N.Y. Feb. 20, 2004) (Sharpe, D.J.) (citations omitted).

The record establishes that Brown filed an application seeking leave to appeal the Third Department's denial of his direct appeal with the New York State Court of Appeals on June 19, 2008. *See* Dkt. No. 15-6. In that application, Brown sought leave to appeal as to the following appellate claims: i) Brown was the victim of selective prosecution; ii) the prosecution abused its discretion by failing to offer Brown an adequate plea agreement; iii) the Trial Court wrongfully allowed the prosecution to offer certain testimonial evidence against Brown; iv) Brown's trial counsel rendered ineffective assistance; and v) the County Court lacked the necessary jurisdiction to criminally try Brown. *See id.* Petitioner thereafter filed a supplemental leave application with New York's Court of Appeals on July 4, 2008. *See* Dkt. No. 15-7. In that submission, Brown reiterated his claims that he was the victim of selective prosecution and that the Trial Court lacked the jurisdiction to criminally prosecute Brown. *Id.* at Points One, Three. He further asserted in that supplemental application that the prosecutor "circumvented the evidentiary process" when it allowed articles of clothing that belonged to Brown to be viewed by both the jury and witnesses at Brown's trial. *Id.* at Point Two. However, in neither of those submissions did Brown ever request that the Court of Appeals grant him leave to appeal on a claim that the prosecutor failed to present exculpatory evidence to the Grand Jury. Therefore, Brown has failed to exhaust the claim he raises in his third ground for relief.

Finally, as noted *ante*, petitioner himself concedes that he failed to assert in the state courts the claim he raises in his fourth ground for relief until after he commenced this action. *See* Dkt.

10

No. 2 at ¶¶ 1-3; Dkt. No. 8 at p. 1; Dkt. No. 17 at ¶ 1 (same).[5]

In light of the foregoing, this Court concludes that Brown has not demonstrated that he exhausted the claims he asserts in his first, third, and fourth grounds for relief.[6]

When a habeas petitioner does not fully exhaust his claims, a federal court may find that there is an absence of available state remedies "if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile." *Aparicio*, 269 F.3d at 90 (citing *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997)); *see also Lurie v. Wittner*, 228 F.3d 113, 124 (2d Cir. 2000).[7]

Petitioner cannot now properly argue the federal nature of the claims he asserts in either his first or third grounds for relief, or the "actual innocence" claim Brown raises in his fourth ground, to the Appellate Division because a defendant is "entitled to one (and only one) appeal to the Appellate Division." *See Aparicio*, 269 F.3d at 91 (citations omitted). Moreover, Brown could not now raise these theories in another CPL § 440 motion filed with the County Court because he could have raised these arguments – all of which are based on matters contained in the record – in the CPL Motion he filed with the County Court in March, 2009. *E.g. Williams v. Burge*, No.

---

[5] After commencing this action, Brown appears to have filed a second CPL motion in Schenectady County Court in which he asserts the actual innocence claim raised by him in his fourth ground for relief. *See* attachment to Dkt. No. 17; *see also* Petition, Ground Four. However, because that proceeding was filed **subsequent to** the commencement of this action, the claim he asserts in his fourth ground is unexhausted for purposes of the present habeas application. *See Ascenzi v. Erickson*, No. CV-05-2632, 2008 WL 191486, at *3 (M.D.Pa. Jan. 22, 2008) (where petitioner filed federal habeas action prior to receiving decision by state court on application for leave to appeal, claims asserted in that state court application were unexhausted).

[6] "[H]abeas corpus petitioners bear the burden of demonstrating that they have fully exhausted available state remedies." *Fink v. Bennett*, 514 F.Supp.2d 383, 388 (N.D.N.Y. 2007) (McCurn, S.J.) (collecting cases).

[7] Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a federal district court may deny – but not grant – an unexhausted claim on the merits and consider the merits of any exhausted claims. *See Aparicio*, 269 F.3d at 91 n.5 (citation omitted); *Vanness v. Rock*, No. 9:08-CV-0361, 2009 WL 1870940, *6 n.10 (N.D.N.Y. June 29, 2009) (Sharpe, D.J.) (quoting *Aparicio*, 269 F.3d at 91 n.5) (other citation omitted).

02-CV-0695, 2005 WL 2179423, at *14 (N.D.N.Y. Aug. 15, 2005) (Peebles, M.J.) ("petitioner could not now properly raise ... claims in a[nother CPL] motion, since he could have raised these arguments in ... the CPL motion[] he previously filed with the county court") (collecting cases), *adopted*, *Williams v. Burge*, No. 02-CV-0695 (Dkt. No. 35) (N.D.N.Y. Dec. 7, 2005) (Hurd, J.).[8]

Therefore, the Court deems the claims petitioner has asserted in his first, third and fourth grounds for relief to be exhausted for purposes of his habeas application. *See St. Helen v. Senkowski*, 374 F.3d 181, 183-84 (2d Cir. 2004) (citations omitted); *Spence v. Superintendent, Great Meadow Corr. Facility*, 219 F.3d 162, 170 (2d Cir. 2000) (citation omitted). Although the Court has deemed these habeas claims to be exhausted, they are also procedurally defaulted. *See Aparicio*, 269 F.3d at 90 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)); *see also Jones v. Woods*, No. 07 CV 1326, 2009 WL 4906882, *2 (E.D.N.Y. Dec. 18, 2009) (quotation and other citation omitted); *Ciochenda v. Artus*, No. 06 Civ. 5057, 2009 WL 1026018, *5 (S.D.N.Y. Apr. 9, 2009) (holding that unexhausted claims which petitioner can no longer pursue in state court are procedurally forfeited).

Federal courts may only consider the merits of procedurally defaulted claims where the petitioner can establish both cause for the procedural default and resulting prejudice or, alternatively, that a fundamental miscarriage of justice would occur absent federal court review.

---

[8] With respect to his fourth ground, Brown appears to claim that he could not have asserted the "actual innocence" claim he raised in the CPL motion he apparently filed after he commenced this action before he filed his petition because that second CPL motion was brought pursuant to a provision of CPL § 440.10 that was not enacted until *after* he filed this action. *See*, *e.g.*, Dkt. No. 17 at p. 23 (citing CPL § 440.10(1)(i) (enacted August 13, 2010)).

However, that newly enacted section of the CPL *only* pertains to certain victims of sex trafficking offenses. *See* CPL § 440.10(1)(i)*; see also* Preiser, *Supplementary Practice Commentaries*, McKinney's Cons. Laws of N.Y., Book 11A, CPL § 440.10 (2011 electronic update). Since the newly enacted provision of the CPL relates to crimes that are wholly unrelated to those which Brown challenges in the present action, Brown may not properly argue that he could not have asserted the "actual innocence" claim asserted by him in his fourth ground for relief herein in his initial CPL Motion filed in March, 2009.

*See Dixon v. Miller*, 293 F.3d 74, 80-81 (2d Cir. 2002) (quoting *Coleman*, 501 U.S. at 750); *St. Helen*, 374 F.3d at 184 (holding that, "[i]n the case of procedural default (including where an unexhausted claim no longer can proceed in state court), [federal courts] may reach the merits of the claim 'only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent' " (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998)); *Parker v. Phillips*, No. 05-CV-1323, 2008 WL 4415255, *3 (E.D.N.Y. Sept. 24, 2008) (holding that federal courts may only consider procedurally barred claims where the petitioner establishes either cause for his default and prejudice therefrom, or that he is actually innocent of the crime of which he was convicted (quotations and citations omitted)).

To establish legal "cause" which would enable this Court to consider his procedurally forfeited claims, Brown must show that some objective, external factor impeded his ability to fully exhaust his unexhausted claims.  *See Coleman*, 501 U.S. at 753; *Restrepo v. Kelly*, 178 F.3d 634, 638 (2d Cir. 1999) (citation omitted); *Pinero v. Greiner*, 519 F. Supp. 2d 360, 383 (S.D.N.Y. 2007) (quoting *Restrepo*, 178 F.3d at 638).  Examples of such external factors include "interference by officials," the ineffective assistance of counsel, or proof that "the factual or legal basis for a claim was not reasonably available" at the time of the petitioner's default.  *Murray v. Carrier*, 477 U.S. 478, 488 (1986) (internal quotations and other citation omitted); *Ikker v. Taylor*, No. 08 CV 3301, 2008 WL 5110866, *4 (E.D.N.Y. Dec. 3, 2008) (quotation omitted).

Nowhere in this action does Brown attempt to establish legal cause for his procedural defaults discussed *ante*.  Additionally, this Court's review of the record fails to reveal legal cause for petitioner's failure to exhaust the above-referenced claims.  Specifically, Brown has never argued in the state courts that his appellate counsel wrongfully failed to articulate the claims

13

Brown now raises in his initial ground for relief in federal terms, or that such counsel wrongfully failed to seek leave to appeal with respect to Brown's appellate claim that the prosecutor improperly failed to play an exculpatory tape recording to the Grand Jury.  Nor has he articulated any basis upon which this Court may properly excuse him from not asserting his actual innocence claim until after he commenced this action.[9]

Since petitioner has not established cause for his failure to exhaust the above-mentioned habeas claims, this Court need not consider whether he has suffered the requisite prejudice because federal habeas relief is unavailable under this limited exception permitting review of procedurally forfeited claims unless the petitioner demonstrates **both** cause and prejudice.  *See Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985); *Long v. Lord*, No. 03-CV-0461, 2006 WL 1977435, *6 (N.D.N.Y. Mar. 21, 2006) (McCurn, S.J.) (footnote and citations omitted); *D'Alessandro v. Fischer*, No. 01 Civ. 2551, 2005 WL 3159674, *9 n.10 (S.D.N.Y. Nov. 28, 2005) (stating that, "[a]s Petitioner has not shown cause for his default, this Court need not even reach the question of whether Petitioner can show prejudice") (citing *Stepney*, 760 F.2d at 45).

The finding that Brown has failed to demonstrate cause for his procedural defaults does not necessarily preclude this Court from considering his procedurally forfeited claims, however, because, as noted above, a federal court may nonetheless properly review such claims if it is convinced that the failure to consider the defaulted claims would amount to a fundamental miscarriage of justice.  *E.g.*, *Dixon*, 293 F.3d at 80-81 (citation omitted).  However, the Second Circuit has noted that:

---

[9] Before the respondent filed any papers relating to Brown's petition, this Court suggested to Brown that he could seek the dismissal of this action without prejudice if he wished to fully exhaust all of the claims upon which he sought federal habeas intervention, and thereafter commence a new action in which he asserted his then-fully exhausted claims.  *See* Dkt. No. 3 at pp. 4-5.  Brown declined this Court's invitation.  *See* Dkt. No. 6.

> the fundamental miscarriage of justice exception is "extremely rare" and should be applied only in "the extraordinary cases." *Schlup v. Delo*, 513 U.S. 298, 321-22, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995). " '[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley*[], 523 U.S. [at] 623 . . . . "To establish actual innocence, [a] petitioner must demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.' " *Id.* (citing *Schlup*, 513 U.S. [at] 327-28) . . . (some internal citations and quotation marks omitted)).

*Sweet v. Bennett*, 353 F.3d 135, 142 (2d Cir. 2003); *see also D'Alessandro*, 2005 WL 3159674, at *8 (citations omitted); *Marengo v. Conway*, 342 F. Supp. 2d 222, 228 (S.D.N.Y. 2004) (quotation and other citation omitted).

In conjunction with this action, the Court has reviewed the state court record that respondent provided.  Nothing in the record suggests that Brown is actually innocent of the crimes of which he was convicted.  To the contrary, after having reviewed the state court record, this Court endorses the observation of Judge Richards at Brown's sentencing that "the evidence was more than sufficient to convict [Brown] of the charged crimes." *See* Sentencing Tr. at p. 18. Petitioner therefore cannot seek safe harbor from the dismissal of his defaulted claims under this final exception permitting habeas review of procedurally defaulted grounds.

Therefore, this Court denies, as procedurally forfeited, the claims asserted by petitioner in his first, third, and fourth grounds for relief.[10]

---

[10] The Court additionally finds that even if Brown had not procedurally defaulted on the above claims, the grounds for relief discussed above are also substantively without merit.  Specifically, as to his first and third grounds for relief, this Court finds that Brown has failed to demonstrate that the state courts' denial of his various claims alleging prosecutorial misconduct, *see Brown*, 52 A.D.3d at 946-47; June, 2009 Order at p. 4, is either contrary to, or represents an unreasonable application of, *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (noting that, for habeas relief to be granted based on a claim of prosecutorial misconduct, the alleged misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process") (internal quotation omitted).  Additionally, as noted *ante*, Brown has failed to demonstrate his actual innocence of the crimes of which he was convicted.  Therefore, his fourth ground for relief, in which he alleges that he is actually innocent of the convictions challenged herein, is also substantively without merit.

**B.      Claim Alleging Ineffective Assistance of Counsel**

In his remaining, exhausted, ground for relief, Brown argues that this Court should set aside his convictions because he received the ineffective assistance of trial counsel.  *See* Petition, Ground Two.

**i.      Standard of Review**

The enactment of the AEDPA brought about significant new limitations on the power of a federal court to grant habeas relief to a state prisoner under 28 U.S.C. § 2254.  In discussing this deferential standard, the Second Circuit noted in *Jones v. West*, 555 F.3d 90 (2d Cir. 2009) that:

> a federal court may grant a writ of habeas corpus for a claim that has previously been adjudicated on the merits by a state court only if the adjudication of the claim:
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* at 96 (quoting 28 U.S.C. § 2254(d)); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing 28 U.S.C.§ 2254(d)(1), (2)); *Hawkins v. Costello*, 460 F.3d 238, 242-43 (2d Cir. 2006).  In providing guidance concerning application of this standard, the Second Circuit has observed that:

> a state court's decision is "contrary to" clearly established federal law if it contradicts Supreme Court precedent on the application of a legal rule, or addresses a set of facts "materially indistinguishable" from a Supreme Court decision but nevertheless comes to a different conclusion than the Court did.  [*Williams v. Taylor*, 529 U.S. 362,] 405-06 [(2000)]; *Loliscio v. Goord*, 263 F.3d 178, 184 (2d Cir. 2001). . . .  [A] state court's decision is an "unreasonable application of" clearly established federal law if the state court "identifies the correct governing legal principle from [the Supreme] Court's

16

> decisions but unreasonably applies that principle to the facts" of the
> case before it. *Williams*, 529 U.S. at 413.

*Thibodeau v. Portuondo*, 486 F.3d 61, 65 (2d Cir. 2007); *see also Williams v. Artuz*, 237 F.3d 147,

152 (2d Cir. 2001) (citing *Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)).

Significantly, a federal court engaged in habeas review is not charged with determining

whether the state court's ruling was merely incorrect or erroneous, but instead whether such

decision was "objectively unreasonable." *Williams*, 529 U.S. at 409; *see also Sellan v. Kuhlman*,

261 F.3d 303, 315 (2d Cir. 2001). "While the precise method for distinguishing objectively

unreasonable decisions from merely erroneous ones is somewhat unclear, it is well-established in

this Circuit that the objectively unreasonable standard of § 2254(d)(1) means that petitioner must

identify some increment of incorrectness beyond error in order to obtain habeas relief." *Sorto v.*

*Herbert*, 497 F.3d 163, 169 (2d Cir. 2007) (internal quotation marks and alteration omitted). As

the Court noted in *Schriro*, "[t]he question under AEDPA is not whether a federal court believes

the state court's determination was incorrect but whether that determination was unreasonable – a

substantially higher threshold." *Id.*, 550 U.S. at 473.

This Court therefore briefly reviews the clearly established Supreme Court precedent that

governs Brown's claims alleging ineffective assistance of trial counsel.

### ii.    Clearly Established Supreme Court Precedent

The Sixth Amendment to the United States Constitution provides that: "[i]n all criminal

prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his

defence." U.S. Const., Amend. VI. To establish a violation of this right to the effective assistance

of counsel, a habeas petitioner must typically show both: 1) that counsel's representation fell

below an objective standard of reasonableness, measured in the light of the prevailing professional

17

norms; and 2) resulting prejudice, that is, a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 688-90 (1984); *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) ("the legal principles that govern claims of ineffective assistance of counsel" were established by the Supreme Court in *Strickland*).

### iii.     Contrary To, or Unreasonable Application of, Clearly Established Supreme Court Precedent

Brown asserts three theories in support of his claim that he received the ineffective assistance of counsel.  He argues that such counsel:  (a) failed to "investigate the exculpatory value of tape-recorded evidence" created during the course of the criminal investigation; (b) did not ask for a curative ruling from the Trial Court after the prosecutor violated Brown's "due process" rights; and (c) wrongfully failed to exhaust all of Brown's Fourth Amendment claims.  *See* Petition, Ground Two.

With respect to his claim that tape-recorded evidence that was exculpatory in nature was not utilized by defense counsel, Brown asserts that a tape recording made at the time of the drug sales establishes that such sales occurred at 12:39 in the afternoon.  *See* Petition at Ground Two. Brown contends that because the prosecution witnesses testified at trial that the drug transactions occurred at 1:39 p.m. on that day, the tape recording demonstrates that Brown did not commit the crimes alleged by the prosecution.  *Id.*

These claims, which were raised by Brown in his CPL Motion, *see id.* at pp. 5-7, were denied by the Trial Court in its June, 2009 Order.  *See id.* at (unnumbered) pp. 2-3.  This Court must therefore ascertain whether that finding of the County Court is either contrary to, or represents an unreasonable application of, *Strickland* and its progeny.

The record reflects that a tape recording of the drug sales was played to the jury, over defense counsel's objections.  Trial Tr. at pp. 383-86.  Nothing in the record before this Court supports Brown's self-serving statements that such tape recording – or any other recording made in conjunction with the related criminal investigation – establishes that the drug transactions occurred at 12:39 P.M.  In this regard, the Court notes that petitioner has not sought permission to submit a copy of any tape recording made during the course of the criminal investigation to this Court, nor has Brown provided this Court with any transcript made of any such exculpatory recording.[11]  The petitioner bears the burden of proving in his habeas petition that his constitutional rights were violated in the state court proceeding.  *See Whitaker v. Meachum*, 123 F.3d 714, 716 (2d Cir. 1997) (citing *Walker v. Johnston*, 312 U.S. 275, 286 (1941) (petitioner has the burden of "sustaining his allegations by a preponderance of evidence" on collateral review) (other citations omitted); *Celleri v. Marshall,* No. 07-CV-4114, 2009 WL 1269754, at *17 (E.D.N.Y. May 6, 2009) (citation omitted); *Rosario v. Ercole,* 582 F.Supp.2d 541, 550 (S.D.N.Y. 2008) (citation omitted).  Brown's failure to establish that an exculpatory tape recording exists represents a failure on his part to sustain his burden of proving this aspect of his habeas petition.

Moreover, even assuming, *arguendo*, that such a recording exists, petitioner is still not entitled to habeas relief on this theory.  Specifically, for this Court to grant Brown's application on this claim, the Court would necessarily have to speculate that:  (a) trial counsel's failure to recognize the claimed exculpatory nature of the tape recording, and thereafter engage in some

---

[11] A copy of that recording was not included in the state court records respondent provided this Court in opposing Brown's application for habeas relief.

unspecified conduct, was objectively unreasonable;[12] (b) had counsel noted the discrepancy now

claimed by Brown regarding the time of the drug transactions reflected on the tape recording,

counsel would have prevailed on a pretrial motion to suppress all "physical and testimoneyal [*sic*]

identification evidence" now advocated by petitioner; and (c) there is a reasonable probability that

Brown would have been acquitted of all crimes of which he was convicted had counsel prevailed

on such pretrial motion, or, alternatively, if the jury had otherwise been made aware of the

purportedly exculpatory tape recording.  *See* Petition, Ground Two.  However, as United States

District Judge Lawrence E. Kahn has observed:

> courts cannot grant habeas relief based upon unsubstantiated
> conclusions, opinions or speculation.  *Wood v. Bartholomew*, 516
> U.S. 1, 8 (1995) (federal courts should not grant "habeas relief on the
> basis of little more than speculation with slight support"); *see
> Osinoiki v. Riley*, CV-90-2097, 1990 WL 152540, at *2-3 (E.D.N.Y.
> Sept.28, 1990) (conclusory statements based on speculation  "are
> inadequate to satisfy petitioner's burden") (citing *Machibroda v.
> United States*, 368 U.S. 487, 495 (1962) and *Dory v. Commissioner
> of Correction*, 865 F.2d 44, 45 (2d Cir. 1989) (per curiam)) (other
> citations omitted).

*Gaffney v. Conway*, No. 9:08-CV-0302, 2009 WL 1706910, at *10 (N.D.N.Y. June 17, 2009)

(Kahn, J.).

Furthermore, even if there had been some type of discrepancy between the time referenced

on the tape recording made at the time of the drug sales *vis-a-vis* the testimonial and other

evidence offered against petitioner at trial, Brown has failed to demonstrate the requisite prejudice.

Specifically, he has not established that there is a reasonable probability that, but for trial counsel's

---

[12] Petitioner does not clearly articulate in this action whether he believes counsel rendered ineffective
assistance by failing to seek the suppression of the tape recording which he claims was exculpatory nature, or,
alternatively, whether such counsel's performance was constitutionally deficient because he failed to highlight to
the jury the exculpatory nature of that purported tape recording.  *See* Petition, Ground Two.

failure to recognize that claimed temporal discrepancy, and either seek the suppression of that recording or highlight the exculpatory aspect of that recording to the jury, the outcome of Brown's trial would have been different.

In his next theory alleging ineffective assistance, Brown argues that his trial counsel wrongfully failed to move for a curative instruction after Brown's " 'due process' was violated by the People at trial." *See* Petition, Ground Two.  Specifically, Brown argues that items of clothing that were "not properly before-the-court were allowed to remain in plain-view of testifying witnesses, aiding them in their testimony." *Id.*  Petitioner asserts that the foregoing gave "undue weight-of-proof to the People's witnesses testimony and an unfair advantage to the prosecution over the defense." *Id.*

Petitioner raised a similar claim in his direct appeal of his conviction.  Specifically, in his *Pro Se* Reply Brief, he argued that the following items were never received into evidence but were in view of both the jury as well as the witnesses who testified against Brown at trial: "green flight style jacket, sneakers, shirt, shoes & lace and belt." *See Pro Se* Reply Brief at Point Nine.  Brown argued in that application that his due process rights, presumably to a fair trial, were violated because the jury and prosecution witnesses could view those articles of clothing during his trial, notwithstanding the fact that they were never received into evidence. *Id.*  The Appellate Division found this claim to be without merit. *Brown*, 52 A.D.3d at 947.

In the present action, Brown argues that although trial counsel initially objected to the placement of those items in such a way so that they could be viewed by both witnesses as well as members of the jury, counsel wrongfully failed to request that the County Court provide the jury with a curative instruction which addressed the fact that the clothing which was purportedly in

view of the jury during the trial was never received into evidence.  *See* Petition, Ground Two.

The record reflects that when the prosecutor sought to rehabilitate Investigator Butterfield on redirect examination by referring to clothing that had been obtained from Brown at the time he was arrested, defense counsel objected; arguing that he had not questioned that witness about Brown's clothing during his cross-examination, and that therefore the District Attorney was attempting to introduce improper rebuttal evidence.  Trial Tr. at pp. 417-18.  After the County Court agreed with defense counsel that the proposed redirect examination went beyond the scope of the cross-examination, defense counsel requested that the prosecutor place the clothing that she had unsuccessfully attempted to utilize on redirect examination "down on the side of the bench or the table."  *Id.* at p. 419.[13]  The Trial Court responded "[i]ts her evidence," to which defense counsel responded "[a]ll right.  All right.  Thanks."  Trial Tr. at p. 419.  There are no further references to that clothing before both parties rested.  *Id.* at pp. 419-650, 654.

During the Trial Court's instructions to the jury, Judge Richards advised the jury that it was "to consider only the evidence" during its deliberations  *Id.* at p. 703.  The Trial Court then noted that such evidence "include[d] the exhibits that [were] received in evidence," and proceeded to list those items, which list did not include any of the items in the disputed bag of clothing.  *Id.*  The County Court also advised the jury that exhibits that were "just seen during the trial ... but not received into evidence [were] not evidence and [were] thus not available" for the jury's inspection and consideration.  Trial Tr. at p. 705.  Judge Richards concluded this instruction by noting that "testimony based on exhibits that were not received in evidence" could be considered by the jury, however "the exhibit itself [would] not [be] available" for the jury's consideration.  *Id.*

---

[13] Defense counsel characterized the items to which the prosecutor wished to refer on redirect examination as a "bag full of clothing and everything."  Trial Tr. at p. 417.

Petitioner has not demonstrated that his trial counsel acted in an objectively unreasonable manner when he failed to request a curative instruction regarding the bag of clothing that was in the courtroom for the latter part of Brown's trial.  As noted *ante*, trial counsel succeeded in precluding the prosecution from showing any of the items contained in that bag to the jury, and nothing in the record suggests that the manner in which that bag of clothing was placed in the courtroom warranted the curative instruction now advocated by Brown.  Moreover, as noted above, the Trial Court specifically instructed the jury that only items that had been received into evidence could be considered by it during the course of deliberations.  Trial Tr. at p. 703.  The jury is presumed to have followed this and all portions of the County Court's instructions.  *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Moss v. Phillips*, No. 9:03-CV-1496, 2008 WL 2080553, at *12 n.20 (N.D.N.Y. May 15, 2008) (Kahn, S.J.) (citations omitted).  Brown has additionally not demonstrated that he was prejudiced by counsel's failure to request any curative instruction which, in this context, would require this Court to find that there is a reasonable probability that, but for defense counsel's failure to request such instruction, the outcome of Brown's trial would have been different.

In the final theory offered by Brown in support of his claim of ineffective assistance, he argues that his trial attorney wrongfully denied Brown "his right to exhaust all of his fourth amendment claims."  *See* Petition, Ground Two.  Specifically, Brown argues that defense counsel wrongfully failed to request that the Trial Court conduct a *Dunaway* hearing,[14] and that counsel's

---

[14] *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248 (1979).  "A *Dunaway* hearing is used to determine whether a statement or other intangible evidence obtained from a person arrested without probable cause should be suppressed at a subsequent trial."  *Montgomery v. Wood*, 727 F.Supp.2d 171, 185-86 (W.D.N.Y. 2010) (citations omitted).

failure to request such a hearing precluded trial counsel from seeking "the suppression of the non-implicit articles seized from petitioner" at the time of his arrest.  *See* Petition, Ground Two.

Petitioner raised this claim in his CPL Motion.  *See* CPL Motion at pp. 5-7.  The County Court denied that application, finding, *inter alia*, that "defense counsel made all the appropriate motions before trial."  *See* June, 2009 Order at (unnumbered) p. 3.

"[A]part from [petitioner's] own opinion that his arrest was without probable cause and counsel should have moved for a [*Dunaway*] hearing, petitioner has not suggested that there were any possible meritorious bases on which such a ... motion could have been premised." *Montgomery*, 727 F.Supp.2d at 186 (denying habeas claim alleging ineffective assistance of trial counsel based upon counsel's failure to request *Dunaway* hearing).  In the present case, Brown has similarly failed to provide the Court with any theory – other than his own belief that his arrest was without probable cause – which supports his current claim that trial counsel acted in an objectively unreasonable manner by failing to request a *Dunaway* hearing in the criminal matter below. Additionally, in light of the detailed testimony offered at trial by the investigators who purchased the drugs from Brown discussed more fully *ante*, this Court finds that petitioner has failed to demonstrate that it was objectively unreasonable for his trial counsel to refrain from seeking a pretrial *Dunaway* hearing.

Nor has petitioner demonstrated that he was prejudiced by counsel's failure to request such a hearing.  In this regard, the Court finds that there is no basis upon which it may properly presume that the testimony of Investigators Butterfield and Cameron at a *Dunaway* hearing would have differed significantly from their trial testimony.  Since the trial testimony of those investigators was strongly suggestive of Brown's guilt of all of the charged crimes – and plainly established

probable cause for Brown's arrest – petitioner cannot demonstrate that he was prejudiced by trial

counsel's failure to request a *Dunaway* hearing.  In light of the foregoing, this Court concludes that

Brown has failed to demonstrate that the County Court's denial of this aspect of his CPL Motion,

*see* June, 2009 Order at (unnumbered) p. 3, is either contrary to, or reflects an unreasonable

application of, the clearly established Supreme Court precedent noted above.  He is therefore not

entitled to federal habeas relief on this final theory alleging ineffective assistance of counsel.

## III.    CERTIFICATE OF APPEALABILITY

Finally, the Court notes that 28 U.S.C. § 2253(c) provides, in relevant part that:

> Unless a circuit justice or judge issues a certificate of appealability,
> an appeal may not be taken to the court of appeals from –
>
>> (A) the final order in a habeas corpus proceeding in
>> which the detention complained of arises out of
>> process issued by a State court . . . .[15]

28 U.S.C. § 2253(c)(1)(A).  A Certificate of Appealability may only be issued "if the applicant has

made a substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. § 2253(c)(2).

Since petitioner has failed to make such a showing herein, the Court declines to issue any

Certificate of Appealability in this matter.

**WHEREFORE**, after having reviewed the state court record, the documents submitted by

the parties in conjunction with this action, the applicable law, and for the reasons discussed herein,

it is hereby

**ORDERED** that Brown's habeas petition (Dkt. No. 1) is **DENIED** and **DISMISSED**, and

it is further

---

[15] Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal may not proceed "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."  *See* Fed.R.App.P. 22(b).

**ORDERED** that the Clerk of Court serve a copy of this Memorandum-Decision and Order upon the parties to this action, and it is further

**ORDERED** that any state court records that were not filed in this action be returned directly to the Attorney General at the conclusion of these proceedings (including any appeal of this Memorandum-Decision and Order filed by any party).

A Certificate of Appealability shall not be issued by this Court.

**IT IS SO ORDERED.**

Date:   March 25, 2011

Norman A. Mordue
Chief United States District Court Judge

26